**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09-CR-00104-ERW |
| ) | |
| DOUGLAS BRAIDLOW, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Douglas Braidlow's ("Defendant") *pro se* Motion for Relief re: First Step Act ("*pro se* Motion #1") [260], his *pro se* Second Motion for Relief re: First Step Act ("*pro se* Motion #2") [261], and his Supplemental Motion for Reduction in Sentence or Compassionate Release to Home Confinement ("Supplement to *pro se* Motion #1") [265]. Defendant seeks a reduction of his sentence to time served, or in the alternative, to modify his sentence to release him immediately to home confinement as a condition of supervised release. ECF No. 265. The government opposes the motions. ECF No. 268. The probation office also filed a report indicting Defendant did not meet the criteria to warrant a sentence reduction. ECF No. 267. Defendant filed a reply to the government's response in opposition. ECF No. 272. Upon review of Defendant's motions, the Government's response, the report prepared by the probation office, and Defendant's reply, the Court will respectfully deny Defendant's motions for compassionate release.

**I.    BACKGROUND**

Defendant entered a guilty plea on September 8, 2009, to Conspiracy to Possess with the Intent to Distribute Methamphetamine and Marijuana (Count I) and Conspiracy to Tamper With

a Witness by Attempted Murder (Count VI).  ECF No. 173.  On January 5, 2010, this Court sentenced Defendant to 240 months' imprisonment with the Federal Bureau of Prisons, to be followed by a 5-year term of supervised release.  ECF No. 219.

Defendant filed *pro se* Motion #1 with this Court on April 20, 2020, requesting release due to COVID-19 and his underlying health conditions.  ECF No. 260.  He filed *pro se* Motion #2 on May 18, 2020, requesting compassionate release pursuant to 28 U.S.C. §994(t) in order to facilitate care for his elderly and incapacitated father.  ECF No. 261.  On June 18, 2020, counsel for Defendant filed a Supplement to *pro se* Motion #1, requesting release because Defendant is at heightened risk for complications and negative health outcomes including severe illness and death if he were to contract COVID-19.  ECF No. 265.  The United States' Probation Office filed a report on July 9, 2020 opposing release.  ECF No. 267.  On July 15, 2020, the Government filed a response in opposition to Defendant's motions.  ECF. No. 268.  Defendant's counsel filed a reply on August 12, 2020, which included Defendant's updated medical records stating Defendant had tested positive for COVID-19 on May 14, 2020.  ECF No. 272.

At present, Defendant is 61 years old.  ECF No. 267.  Defendant is currently confined at the low security Federal Correctional Institution in Forrest City, Arkansas ("FCI Forrest City") with a projected release date of February 16, 2027.  *See* Federal Bureau of Prisons ("BOP") Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed August 21, 2020).  Defendant tested positive for COVID-19 on May 14, 2020 and was isolated for twenty-eight days.  ECF No. 272-1.  The report filed by the probation office states Defendant had colon cancer which required surgery in 2003 to remove part of his colon, and Defendant currently has diagnoses of emphysema, acute bronchitis, and shoulder pain.  ECF No. 267.  Defendant argues in his *pro se* Motion #1 and his Supplement to *pro se* Motion #1 that these medical conditions, in combination

2

with his age and the COVID-19 pandemic, place him at a heightened risk for complications and even death. ECF No. 265. Defendant emphasizes in his reply to the government's response in opposition that as of August 4, 2020, FCI Forrest City reports that 1,677 prisoners have been tested for the virus, and of those prisoners tested, 674 have tested positive. ECF No. 272.

Defendant asserts in his reply brief that he exhausted his administrative remedies by submitting a request for compassionate release to the warden of FCI Forrest City on May 27, 2020, which was denied by the warden on May 28, 2020. *Id.* The report filed by the probation office, as well as Defendant's reply, state that Defendant's request for compassionate release from the warden requested release so that Defendant could help care for his elderly and incapacitated father. ECF. Nos. 267 and 272. Defendant does not claim he appealed the warden's decision, but instead argues 30 days have passed since he submitted his request and therefore the Court has the authority to rule on his request. ECF No. 272.

## II.    LEGAL STANDARD

The First Step Act of 2018 was enacted on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194. As amended by the First Step Act, 18 U.S.C. § 3582(c), commonly referred to as the compassionate release statute, provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

3

>(i) extraordinary and compelling reasons warrant such a reduction;
>
>. . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission ("the Commission") is tasked with determining what should be considered an extraordinary and compelling reason. *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). The applicable policy statement is U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A).[1]

Under U.S.S.G. § 1B1.13, the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In Application Note 1 to § 1B1.13, the Commission identifies "extraordinary and compelling reasons" to include the following: (A) the medical condition of the defendant; (B) the defendant's age (at least sixty-five years old); (C) family circumstances such as the death or incapacitation of the caregiver of the defendant's minor children; or (D) other reasons as determined by the Director of the BOP other

---

[1] The Sentencing Guidelines and its commentary predates the First Step Act. "As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future." *United States v. Rodd*, 966 F.3d 740, 747 n.7 (8th Cir. 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019)).

than, or in combination with, the reasons described in subdivisions (A) through (C). U.S.S.G. § 1B1.13, Application Note 1.[2]

"The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." *United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020). Ultimately, the burden is on the defendant to prove a sentencing reduction is warranted. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

## III.    DISCUSSION

Defendant, a 61-year-old colon cancer survivor who currently suffers from chronic obstructive pulmonary disease ("COPD"), argues his continued incarceration places him in exceptional danger because of his pre-existing health conditions in combination with the ongoing and escalating COVID-19 pandemic. Defendant contends FCI Forrest City has a higher number of diagnosed cases of COVID-19 than many other federal prisons and claims he has a higher risk of serious complications and death from the respiratory symptoms of COVID-19 based upon his underlying medical conditions. Defendant also requests compassionate release to care for his ailing father. The government asserts the motions for compassionate release must be denied because Defendant failed to exhaust his administrative remedies, failed to demonstrate he no longer poses a significant danger to the community, and failed to show the sentencing factors under 18 U.S.C. § 3553(a) weigh in favor of release. In Defendant's reply to the government's response in opposition, counsel for Defendant argues Defendant did exhaust his administrative remedies and is not dangerous because he was a first-time offender who has since demonstrated significant rehabilitation.

---

[2] The Court is not bound to follow these "extraordinary and compelling reasons" but may consider them in ruling on a motion for compassionate release.

### A. Exhaustion of Administrative Remedies

The Court recognizes the seriousness of the current health emergency posed by the COVID-19 pandemic. As a threshold matter, however, Defendant has failed to satisfy the requirement under 18 U.S.C. § 3582(c)(1)(A) to first ask the Bureau of Prisons to file a motion for compassionate relief on his behalf based on his request that he is entitled to release because of his underlying health conditions and the COVID-19 pandemic. Section 603(b) of the First Step Act permits a defendant to bring such a motion but only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Defendant argues in his reply brief that he has met the exhaustion requirement because he filed a request for compassionate release on May 27, 2020, and the request was denied by the warden the following day. Defendant does not claim he followed the administrative remedy process, which requires Defendant to appeal the warden's decision, but rather argues he has satisfied § 3582(c)(1)(A) because it has now been longer than 30 days since the warden received his request. However, Defendant's request to the warden was for release due to his need to care for his ailing father, not for release due to his own underlying medical conditions in combination with the pandemic. Defendant's reply claims the context of the request to the warden need not be identical to his motion to the Court for release.

While the Court agrees with Defendant that the request to the warden and the motion to the court are not required to be identical, "[o]ne of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP

6

an opportunity to address the issue." *United States v. Valenta*, No. CR 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

Here, Defendant has not presented any evidence that he requested compassionate relief from the warden based on his own medical conditions. As a result, the BOP has been unable to assess if Defendant's medical conditions warrant a motion for release. Because Defendant did not request release from the warden based on his own health conditions in combination with the pandemic, the Court is unable to consider the claims raised in *pro se* Motion #1 or in the Supplement to *pro se* Motion #1. *United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020) ("Simply put, the Court cannot consider a motion for compassionate release that is based on evidence or arguments that weren't presented to the Bureau of Prisons first.").

Defendant argues the Court can and should waive the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) due to the urgency of the COVID-19 pandemic. Defendant cites to cases outside this jurisdiction which have waived the exhaustion requirement and granted compassionate release based on risks posed by COVID-19 to vulnerable inmates. However, the Court is unconvinced. The Third Circuit recently held "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" in the context of the current COVID-19 pandemic. *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020). As reasoned by the *Raia* court, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially

considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."[3]  *Id.*

Regarding Defendant's *pro se* Motion #2, which requested release based on Defendant's father's failing health, we find Defendant failed to fully exhaust his administrative remedies. Defendant has provided no evidence he appealed the warden's denial of Defendant's request for compassionate release.  Instead, counsel for Defendant argues because 30 days have lapsed since the warden received Defendant's request, he has satisfied § 3582(c)(1)(A).

District courts within the Eighth Circuit are divided on whether a defendant fulfills the exhaustion requirement after 30 days when the warden denies the defendant's request within 30 days and the defendant does not administratively appeal the denial.  *United States v. Burnside*, No. 18-CR-2068-CJW-MAR, 2020 WL 3443944, at *4–5 (N.D. Iowa June 18, 2020).  "Most courts have held that if a defendant's request is denied by the warden within 30 days, the defendant must exhaust administrative appeals within the BOP."  *Id.* at *5.  This Court agrees.[4]

### B. *Extraordinary and Compelling Reasons*

While the Court concludes Defendant has not exhausted his administrative remedies, he is still unable to meet his burden of showing he qualifies for compassionate release.  Regarding *pro se* Motion #1 and the Supplement to *pro se* Motion #1, the BOP has implemented safety

---

[3] The Court notes on April 3, 2020, the Attorney General issued new directives to the BOP in light of the COVID-19 epidemic and the recently enacted Coronavirus Aid, Relief, and Economic Security (CARES) Act.  *Memorandum for Director of Bureau of Prisons* (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.  The Attorney General formally found that "emergency conditions are materially affecting the functioning of the Bureau of Prisons" and, as a result, he was directing the BOP to "immediately review all inmates who have COVID-19 risk factors."  *Id.*  The BOP is to immediately process suitable candidates for home confinement, and the Attorney General notes that "time is of the essence."  *Id.*

[4] When reviewing the entirety of the amendments made to 18 U.S.C. § 3582 by the First Step Act, it is apparent Congress's intent was to require defendants to fully exhaust the administrative remedy procedure issued by the BOP.

measures to contain movement and contain the spread of the virus.[5] As Defendant acknowledges in his reply brief, he already contracted COVID-19, and as a result was placed in isolation for twenty-eight days. Defendant's case was classified by the BOP Health Services as "asymptomatic," noting Defendant "denie[d] shortness of breath or cough," and "met the CDC criteria for release from isolation."

While the Court is sympathetic to Defendant's fears of complications from the virus or possible reinfection, nothing in Defendant's motions demonstrate the BOP is unable to adequately treat Defendant while he is incarcerated. *See United States v. Somers*, No. CR 18-96 (DWF), 2020 WL 5097097, at *3 (D. Minn. Aug. 28, 2020) (finding that the defendant who had contracted COVID-19 twice and since recovered failed to establish an extraordinary and compelling reason for release). Further, if Defendant were to suffer medical complications, the BOP can release him for treatment via a medical furlough. *See* 18 U.S.C. § 3622(a)(3).

Regarding Defendant's *pro se* Motion #2, we find Defendant has not demonstrated extraordinary or compelling reasons for his release. Defendant claims in his motion he is the only available caregiver for his ailing father. "A defendant's family circumstances constitute extraordinary and compelling reasons when 'the caregiver of the defendant's minor child or minor children' dies or is incapacitated or when 'the defendant's spouse or registered partner' is incapacitated and 'the defendant would be the only available caregiver for the spouse or registered partner.'" *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) (quoting § 1B1.13

---

[5] *See* Fed. Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (August 25, 2020).

9

app. n.1(C)).  While the Court understands Defendant's wish to care for his father, the request is not extraordinary and compelling.[6]

### C.  18 U.S.C. § 3553(a) Factors

Even if extraordinary and compelling reasons support Defendant's request for a sentence reduction, when considering a motion for compassionate release the Court must "consider the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant;" as well as the need for the sentence imposed, *inter alia*, "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment of the offense."  18 U.S.C. § 3553(a).  The Court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  *Id.*

The Court finds after reviewing the § 3553(a) factors that Defendant has failed to carry his burden for release.  Defendant was convicted of Conspiracy to Tamper With a Witness by Attempted Murder, as a result of his attempt to hire a hit man to kill the individuals he believed were going to testify against him on his pending charges for Conspiracy to Possess With Intent to Distribute Methamphetamine and Marijuana.  Defendant's motion acknowledges the seriousness of his conviction for Conspiracy to Tamper With a Witness by Attempted Murder, but states "his

---

[6] The Court notes following the enactment of the First Step Act, the BOP released Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf (January 17, 2019) ("Requests Based on Non-Medical Circumstances – Death or Incapacitation of the Family Member Caregiver.  The criteria for a [reduction in sentence] request may include the death or incapacitation of the family member caregiver of an inmate's child ….  For these requests, 'child' means a person under the age of 18 and 'incapacitation' means the family member caregiver suffered a sever injury … or suffers from a severe illness … that renders the caregiver incapable of caring for the child.").

attempt to tamper with a witness was a crime of desperation committed while suffering from the effects of drug addiction." This concerns the Court, as Defendant had drug-related incident reports filed against him on August 29, 2018, and November 8, 2018. The incident reports were both for Disruptive Conduct – Greatest Severity, and the probation office report states, "Records indicate similar conduct for both incidents: wherein, [Defendant] was found, along with other inmates, lying on his back on a restroom floor, unresponsive, with an odor of smoke present." ECF. No. 267 p. 3.

Additionally, allowing Defendant to be released now after serving only a fraction of his sentence would not reflect the seriousness of his offense nor provide just punishment for his offenses. It also would give rise to unwarranted sentencing disparities. The guideline range at sentencing recommended Defendant be sentenced to between 262- and 327-months' imprisonment. Pursuant to the plea agreement, Defendant was sentenced to 240-months' imprisonment. To date, Defendant has served approximately 137-months in custody.

### D. Home Confinement

The Court further notes it lacks authority to order the BOP to allow Defendant to serve the remainder of his sentence on home confinement, as the designation of "placement for the remainder of [Defendant's] sentence is vested solely within the discretion of the BOP," and the First Step Act did not change that.[7] *United States v. Clausen*, No. CR 16-256 (MJD/LIB), 2020 WL 1442852, at *1 (D. Minn. Mar. 24, 2020).

## IV.    Conclusion

---

[7] While this Court could order a defendant to remain at his residence under electronic monitoring as a condition of supervised release, doing so would first require this Court to grant a reduction in Defendant's sentence.

This Court finds, in addition to Defendant's failure to request compassionate release from the warden due to his medical conditions and the pandemic, the factors set forth in 18 U.S.C. § 3553(a) weigh against release.  For all reasons cited, the Court will deny Defendant's requests for compassionate release.

Accordingly,

**IT IS HEREBY ORDERED** that Douglas Braidlow's *pro se* Motion for Relief re: First Step Act [260], *pro se* Second Motion for Relief re: First Step Act [261], and Supplemental Motion for Reduction in Sentence or Compassionate Release to Home Confinement [265] are **DENIED without prejudice.**

Dated this 3rd day of September, 2020.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE